## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Mar 31 2020, 9:31 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Deidre L. Monroe
Lake County Public Defender
Crown Point, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of A.G. (Child) and R.R. (Father);

R.R. (Father),

*Appellant-Respondent,*

v.

The Indiana Department of Child Services,

*Appellee-Petitioner*

March 31, 2020

Court of Appeals Case No.
19A-JT-2289

Appeal from the Lake Superior Court

The Honorable Thomas P. Stefaniak, Judge

Trial Court Cause No.
45D06-1904-JT-126

**May, Judge.**

[1]  R.R. ("Father") appeals the involuntary termination of his parental rights to A.G ("Child").[1]  Father argues the trial court's findings do not support its conclusions that there existed a reasonable probability the conditions under which Child was removed from his care would not be remedied and that termination of Father's parental rights was in Child's best interests.  We affirm.

# Facts and Procedural History

[2]  C.G. ("Mother") gave birth to A.G. on August 27, 2017.  Mother did not receive prenatal care and tested positive for illegal substances—benzodiazepine and THC—at the time of delivery.  Father was not present at the time of delivery and did not immediately establish paternity.  After delivery, A.G. experienced substance abuse withdrawal symptoms.  On the same day, Father and Mother engaged in a physical altercation at the hospital, and staff called law enforcement.  On August 28, 2017, DCS received a report alleging that Child was a victim of neglect because Mother admitted a history of heroin, benzodiazepine, THC, and PCP use during the pregnancy.  On August 29, 2017, DCS took Child into custody without a court order because: (1) "Mother's substance abuse is too severe to ensure safety of the child;"  (State Ex. at 10);  and (2) "it is detrimental to the child's health and welfare to remain

---

[1] Mother's parental rights were also terminated, but she does not participate in this appeal.

in the home" "due to the severe level of Mother's substance abuse and the clear signs of domestic violence inside the home between Parents." (*Id.*)

[3] On September 5, 2017, DCS filed a verified petition alleging Child to be a Child in Need of Services ("CHINS"). On the same day, the court held an initial hearing and decided:

> The Court finds that it is in the best interests of the child to be removed from the home environment and remaining in the home would be contrary to the welfare of the child because the home environment is unable to meet the basic needs to the child, and/or the home environment poses a danger to the safety of the child. Further, the facts stated in the pleadings and papers of the DCS and all other service providers filed herein are incorporated by reference.

> The Court finds that reasonable efforts to prevent or eliminate removal of the child were not required due to the emergency nature of the situation because the safety of the child precluded the use of family services.

> It is in the best interests of the child to remain outside of the parent/guardian/custodian(s)' custody.

(App. Vol. II at 6-7.) Child was placed in foster care, where she remained throughout these proceedings.

[4] On October 2, 2017, the court held a dispositional hearing where Mother and Father admitted the material allegations of the Petition, and the court declared Child a CHINS. The court ordered parents to complete all services offered by DCS. Father was ordered to complete the following services and follow all

recommendations: (1) clinical interview and assessment; (2) substance use disorder assessment; (3) parent family functional assessment; (4) random drug screens; (5) hair follicle drug screens; (6) home based casework services and visitation supervision; (7) domestic violence services; and (8) father engagement services to establish paternity of Child.

[5]     A March 6, 2018, DCS progress report stated that Father was becoming more compliant with services. On June 11, 2018, DCS's progress report stated Father: (1) was incarcerated for unauthorized entrance into a vehicle and resisting law enforcement; and (2) violated his probation. On September 4, 2018, a DCS progress report stated that Father was released from jail in August, but Father had missed or canceled half of the visits scheduled with Child since his release. Father participated in two visits in August and cancelled or did not appear for two other visits. In September, he participated in three visits and did not appear for one visit. On November 20, 2018, DCS's progress report stated that Father was re-arrested on new charges on September 18, thus was unable to visit Child.

[6]     On December 11, 2018, DCS filed an emergency request for change of placement because on December 7 Mother, who had been granted weekend unsupervised visits, was found unconscious from a drug overdose with Child sitting next to her, and on December 10 Mother was found unconscious on a street in Fort Wayne. On February 18, 2019, DCS's progress report stated

Father had not completed his substance abuse assessment or his initial clinical assessment, but he was compliant with his weekly visits with his daughter.[2]

[7] On April 30, 2019, the State filed a petition for involuntary termination of the parent-child relationship based on, in part, Father's noncompliance with services. On May 16, 2019, DCS's progress report stated that Mother and Father were inconsistent with their visits. Father was appropriate during visits, but he had yet to complete the ordered initial clinical assessment and the substance abuse assessment.

[8] On August 8, 2019, the court held a fact-finding hearing. During the hearing, DCS's Assessment Family Case Manager and DCS's Ongoing Permanency Worker—respectively, Breanne LaPlante and Lisa Sternberg—testified about their interactions with Mother and Father during the CHINS proceedings. Father also testified about why his parental rights should not be terminated. On August 28, 2019, the court involuntarily terminated Father's parental rights to Child.

# Discussion and Decision

[9] We review termination of parental rights with great deference. *In re K.S.*, 750 N.E.2d 832, 836 (Ind. Ct. App. 2001). We will not reweigh evidence or judge

---

[2]At this time, Mother complied with her supervised visits with Child, and this specific progress report does not mention when Father was released from incarceration.

credibility of witnesses. *In re D.D.*, 804 N.E.2d 258, 265 (Ind. Ct. App. 2004), *trans. denied*. Instead, we consider only the evidence and reasonable inferences most favorable to the judgment. *Id*. In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent's rights only if it is clearly erroneous. *In re L.S.*, 717 N.E.2d 204, 208 (Ind. Ct. App. 1999), *reh'g denied*, *trans. denied*, *cert. denied* 534 U.S. 1161, 122 S. Ct. 1197 (2002).

[10]     "The traditional right of parents to establish a home and raise their children is protected by the Fourteenth Amendment of the United States Constitution." *In re M.B.*, 666 N.E.2d 73, 76 (Ind. Ct. App. 1996), *trans. denied*. A trial court must subordinate the interests of the parents to those of the child, however, when evaluating the circumstances surrounding a termination. *In re K.S.*, 750 N.E.2d at 837. The right to raise one's own child should not be terminated solely because there is a better home available for the child, *id.*, but parental rights may be terminated when a parent is unable or unwilling to meet his or her parental responsibilities. *Id*. at 836.

[11]     To terminate a parent-child relationship in Indiana, DCS must allege and prove:

> (A) that one (1) of the following is true:
> (i) The child has been removed from the parent for at least six (6) months under a dispositional decree.
> (ii) A court has entered a finding under IC 31-34-21-5.6 that reasonable efforts for family preservation or reunification are not required, including a description of

the court's finding, the date of the finding, and the manner in which the finding was made.

(iii) The child has been removed from the parent and has been under the supervision of a county office of family and children or probation department for at least fifteen (15) months of the most recent twenty-two (22) months, beginning with the date the child is removed from the home as a result of the child being alleged to be a child in need of services or a delinquent child;

(B) that one (1) of the following is true:

(i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.

(ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.

(iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;

(C) that termination is in the best interests of the child; and

(D) that there is a satisfactory plan for the care and treatment of the child.

Ind. Code § 31-35-2-4(b)(2). DCS must provide clear and convincing proof of these allegations. *In re G.Y.*, 904 N.E.2d 1257, 1260-61 (Ind. 2009), *reh'g denied*. "[I]f the State fails to prove any one of these statutory elements, then it is not entitled to a judgment terminating parental rights." *Id.* at 1261. Because parents have a constitutionally protected right to establish a home and raise their children, the State "must strictly comply with the statute terminating parental rights." *Platz v. Elkhart Cty. Dep't of Pub. Welfare*, 631 N.E.2d 16, 18 (Ind. Ct. App. 1994).

[12] When, as here, a judgment contains specific findings of fact and conclusions thereon, we apply a two-tiered standard of review. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). We determine whether the evidence supports the findings and whether the findings support the judgment. *Id*. "Findings are clearly erroneous only when the record contains no facts to support them either directly or by inference." *Quillen v. Quillen*, 671 N.E.2d 98, 102 (Ind. 1996). If the evidence and inferences support the juvenile court's decision, we must affirm. *In re L.S.*, 717 N.E.2d at 208.

[13] Father does not challenge the findings, so they stand proven. *See Madlem v. Arko*, 592 N.E.2d 686, 687 (Ind. 1992) ("Because Madlem does not challenge the findings of the trial court, they must be accepted as correct."), *reh'g denied*. Instead, Father challenges the court's conclusions that: (1) there was reasonable probability that the conditions under which Child was removed from his care would not be remedied; (2) there was reasonable probability that continuation of parent-child relationship posed a threat to Child's well-being; and (3) termination was in Child's best interests.

## Reasonable Probability Conditions Not Remedied

[14] Father argues the trial court's findings do not support its conclusion that there's a reasonable probability that the conditions under which Child was removed from his care would not be remedied. Father asserts that he is "in substantial compliance with his case plan" because "he has housing, a job, CDL, negative drug screens and has bonded with his daughter." (Appellant's Br. at 14.)

However, Father claims he did not comply "fast enough to satisfy DCS or the [c]ourt[,]" (*id.* at 15), and he argues that the court's termination order was error because "there was no evidence presented that [F]ather would not continue to seek any treatment that would assist him in being reunited with [Child]." (*Id.* at 14.) For those reasons, Father believes that termination was clearly erroneous.

[15] We disagree with Father's arguments because the court's findings support its conclusion:

> . . . . Father has a long criminal history and was in and out of incarceration throughout the CHINS case. . . . Father was unavailable to care for the child due to his multiple incarcerations. The child became a ward in 2017 and father did not participate in the services. Father was charged with numerous crimes in 2018 while his child was a ward of the State. Father completed the initial assessments in 2019, two years after the case began.
>
> Father recently completed the assessments and the recommendations were domestic violence counseling, psychiatric evaluation and intensive outpatient substance abuse services. Father did not complete the recommended services. Father is not consistent with submitting his drug screens. Father is very inconsistent with his service providers. Father is very inconsistent with his visitations with the child and only has attended approximately fifty percent of the scheduled visits. Father is a no show for visits, which is detrimental to the child. Father has [a] previous mental health diagnosis that he is not addressing. Father has not progressed in his services or his visitations in the two years that the CHINS case has been open. Father's historic pattern of noncompliance cannot be ignored.

Father testified that he now has housing, a job, food stamps, SSI, [and] negative drug screens and he feels that he is moving in the right direction. Father believes that he and the child are bonded and that may likely be the case. However, it takes more than 1 and ½ hours per week that the visits consisted of to really know the rigors of caring for a child and missing 50% of the scheduled visits were disappointing to the child.

Parent[s'] pattern of conduct cannot be ignored. Both mother and father have extensive criminal histories with multiple incarcerations. Parents have a history of domestic violence issues which neither have [sic] addressed. . . . Father has not completed domestic violence services.

The permanency plan changed to termination of parental rights and adoption on March 11, 2019.

Neither parent has remedied the reasons for out of home placement for the child.

Neither parent is providing any emotional or financial support of the child. Neither parent has completed any case plan for reunification. Neither parent is in a position to properly parent this child. The child is in placement and is bonded and thriving.

Despite attempts at reunification, the child remains outside of the parents' care. The original allegations of neglect have not been remedied by the parents. Neither of these parents have demonstrated an ability to independently parent the child and provide the necessary care, support and supervision. Even considering the parent's [sic] continued involvement in services, there is no basis for assuming they will complete the necessary services and find one or both of themselves in a position to receive the child into the home. The parents failed to utilize the

available services and make necessary efforts to remedy the
conditions, which led to intervention by DCS and the Court.

(App. Vol. II at 3-4.)

[16] The conditions under which Child was removed from Father's care still existed while Child was a ward of the State. In his brief, Father claims that he: (1) "completed all his probation and [is] free from any court supervision;" (2) missed his appointments because he "had scheduling and transportation problems with his job;" and (3) recently completed his assessments and "began his recommended treatment as a result of the assessments." (Appellant Br. at 13.) We are not persuaded by these arguments. Father was charged with crimes after DCS intervened. In an effort to reunify Father with Child, DCS recommended Father participate in supervised visits; Father missed fifty percent of his visits, which often disappointed Child. Father completed the initial assessments two years after the case began. We cannot say termination was clearly erroneous when the findings support a conclusion that there is a reasonable probability that the conditions that resulted in Child being removed from Father's care were not going to be remedied. *See In re E.M.*, 4 N.E.3d 636, 644 (Ind. 2014) (findings regarding father's continued non-compliance with services support trial court's conclusion that conditions resulting in children's removal from father's care would not be remedied).[3]

---

[3]Father also challenges the trial court's conclusion that the continuation of the parent-child relationship poses a threat to the well-being of Child. However, we note that Indiana Code section 31-35-2-4(b)(2)(B) is written

# Child's Best Interests

[17] Pursuant to Indiana Code section 31-35-2-4(b)(2)(C), DCS must provide sufficient evidence "that termination is in the best interests of the child." In determining what is in the best interests of a child, the trial court is required to look beyond the factors identified by DCS and consider the totality of the evidence. *In re J.S.*, 906 N.E.2d 226, 236 (Ind. Ct. App. 2009). In so doing, the trial court must subordinate the interests of the parent to those of the child. *Id.* The court need not wait until a child is harmed irreversibly before terminating the parent-child relationship. *Id.* Recommendations of the case manager and court-appointed advocate, in addition to evidence the conditions resulting in removal will not be remedied, are sufficient to show by clear and convincing evidence that termination is in the child's best interests. *Id.*

[18] Father testified that it was not in Child's best interests if his rights were terminated because "I'm fit. I have the financial [sic]. I can nurture her, care for her. We got a good bond. And that's my child, you know what I'm saying." (Tr. Vol. II at 81.) However, Father's pattern of conduct and criminal history indicate that termination of parental rights is in Child's best interests. During the trial, LaPlante testified that Father "was aware that mom had been using some of the substances, but wasn't—wasn't aware of the extent of the

---

in the disjunctive. Therefore, DCS is required to establish by clear and convincing evidence only one of the three requirements of subsection (B). *In re A.K.,* 924 N.E.2d 212, 220 (Ind. Ct. App. 2010). We therefore review only whether the trial court's findings supported its conclusion that there is a reasonable probability that the conditions that resulted in the children's removal or the reasons for their placement outside the home will not be remedied.

substance abuse use by mom." (*Id*. at 12.) Sternberg testified that she attempted, but was not able to make contact with Father during the "multiple times that [he] was incarcerated either at Lake County or at Kimbrough due to criminal charges." (*Id*. at 13.) Father's criminal history consists of: Level 6 felony resisting law enforcement, two probation revocations, Class A misdemeanor domestic battery, and Class A misdemeanor conversion. (App. Vol. II at 125-140.) Three of Father's offenses occurred while Child was a ward of the State.

[19] Sternberg also testified that even though Father had given her a lease to demonstrate he had an apartment, "he wasn't forthcoming with scheduling an appointment with [her] to come out and see it." (Tr. Vol. II at 35.) Out of the six step process of reunifying a child from out of the home placement to in home placement, Sternberg testified that Father is only on step one. The record also indicates that Father missed about fifty percent of his visits, and of those fifty missed visits, he was a no-call or no-show for those visits that he confirmed the night before and the morning of.

[20] Moreover, when asked why termination of parental rights was in the best interests of Child, Sternberg stated:

> [Child] is going to be two years old in two weeks. She is with a foster family, it is the only family she's ever known, besides on [sic] that almost—only two and a half month trial home visit with mom. She's been placed there since birth. She is bonded and engaged fully with this family. They support her. She's got some medical issues going on right now and foster parents have

been on top of addressing these medical issues in making the drive down to Carmel and to Indianapolis to get these issues resolved.

(*Id*. at 42.)

[21] For these reasons, we cannot say termination was not in Child's best interest when testimony by a DCS representative, Father's pattern of conduct, and Father's criminal history support the trial court's conclusion. *See M.M. v. Elkhart Cty. Office of Family & Children*, 733 N.E.2d 6, 13 (Ind. Ct. App. 2000) (recommendations that parental rights be terminated, coupled with evidence that the conditions that resulted in the removal of Child from parent's care will not be remedied, support a finding that termination is in the child's best interest) *abrogated on other grounds by In re G.P.*, 4 N.E.3d 1158 (2014).

# Conclusion

[22] DCS presented clear and convincing evidence that: (1) there was a reasonable probability that the conditions that resulted in the Child's removal would not be remedied; and (2) termination was in Child's best interests. Father has not demonstrated the trial court erred when it terminated Father's parental rights to Child. Accordingly, we affirm.

[23] Affirmed.

Crone, J., and Pyle, J., concur.